IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN D. WALKER,<br><br>　　　　Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Warden,<br><br>　　　　Respondent.<br>_____ | No. C 05-2543 MJJ (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner is a California prisoner who filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the petition should not be granted on the basis of petitioner's cognizable claims. Respondent filed an answer accompanied by a memorandum and exhibits contending that the petition should be denied. The matter is submitted.

**PROCEDURAL BACKGROUND**

Petitioner was convicted by a jury in San Mateo County Superior Court of murder and related charges. The trial court sentenced him to a term of forty years to life in state prison. The California Court of Appeal affirmed the conviction, and the California Supreme Court denied petitioner's petition for review.

Petitioner filed his first habeas petition in the San Mateo County Superior Court on December 20, 2002. This petition was denied. Petitioner then sought reconsideration of

the denial and filed a habeas petition in the California Court of Appeal. Reconsideration was denied, and the California Court of Appeal denied the petition. On April 14, 2003, petitioner filed another habeas petition in the San Mateo County Superior Court in which he presented additional evidence in support of the same claims presented in the previous petition. This petition was denied. Petitioner filed another habeas petition in the California Court of Appeal which was denied on October 8, 2003. On December 29, 2003, petitioner filed a habeas petition in the California Supreme court, which was denied. On October 29, 2004, petitioner filed a third habeas petition in the San Mateo County Superior Court which was denied. On March 15, 2005, petitioner filed another habeas petition in the California Supreme Court. This petition was denied.

## FACTUAL BACKGROUND

The following factual account is set forth in the California Court of Appeal opinion.

> Walker shot Dennis Cheng to death in the early morning of May 8, 1998, in a failed sale of rock cocaine. Cheng drove to an East Palo Alto neighborhood in search of the drug, inquired a woman on the street – Celestine Strauter – where he could find it, and was guided by her, as a passenger, to a block on Clarke Street where Walker was selling. There, Strauter left the car, alerted Walker to Cheng and stood by as the killing took place. Walker leaned into Cheng's driver side window, but after Cheng fumbled with some money, stepped back and fired at him with a .32 caliber handgun, apparently thinking Cheng was either cheating him or had cheated him before. The car sped off and crashed into a parked car and chain link fence. Cheng died of a single bullet to the chest.

(Ex. C at 1-2.)

## DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a) (2005); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2005); Williams v. Taylor, 529 U.S. 362, 402-403 (2000).

A state court decision qualifies as "contrary to" federal law if it directly contravenes a Supreme Court decision on a question of law, or reaches a conclusion converse to a Supreme Court decision with materially indistinguishable facts. Id. at 413. A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-413. In determining whether a state court's decision contravenes or unreasonably applies clearly established federal law, a federal court examines the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In this case, the highest state court to issue a reasoned opinion was the California Court of Appeal.

B.   Legal Claims

   1.   Prosecutorial Misconduct

Petitioner cites three occasions of alleged prosecutorial misconduct, which he contends violate his right to due process. Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Claims of prosecutorial misconduct are reviewed "on the merits, examining 'the entire proceeding[s]' to determine whether the prosecutor's remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Hall v. Whitley, 935 F.2d 164, 165 (9th Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643

(1974)).

### a. Failure to Disclose Agreements Made to Witnesses

Petitioner contends that the prosecutor committed misconduct by failing to disclose all agreements, promises, and inducements made to witnesses who testified against petitioner at trial and in hearings prior to trial. Petitioner argues that prosecution witnesses were induced to testify because of pending criminal charges and the prosecution failed to reveal to the defense any and all deals made to the witnesses.

The prosecution must disclose to the defense a government agreement with a witness that may motivate the witness to testify and that may affect the outcome of the trial. Giglio v. United States, 405 U.S. 150, 154-155 (1972). To prevail on a claim that the prosecution suppressed evidence of such a deal, petitioner must first demonstrate the existence of an agreement between the government and the witness. Williams v. Woodford, 384 F.3d 567, 597 (9th Cir. 2004).

Here, petitioner does not provide any specific information as to what promises or inducements the witnesses were given in exchange for their testimony. In any case, the prosecution did reveal agreements made to prosecution witnesses. The district attorney prepared and filed witness immunity agreements for Ronnie Lamont Mitchell and Marquis Ray Hamilton, which the court approved prior to their testimony. (CT at 652-653.) Pursuant to California Penal Code section 1127(c), the prosecution submitted a compliance statement, setting out any and all consideration promised to, or received by, the in-custody informants who testified. The prosecution's statement sets out any of the specific benefits received by in-custody informants Ronnie Lamont Mitchell, Marquis Ray Hamilton, Ronne Lamont Johnson, and Roderick Patterson. (CT at 658-659.) All of this information was revealed to the jury during either direct or cross-examination. In addition, the jury was instructed to view the testimony of in-custody informants with distrust. (CT at 792.) In sum, petitioner, his trial counsel, and the jury were made fully aware of any and all agreements between the prosecution and their witnesses, as well as the witnesses criminal history. In addition, the jury was instructed that, in assessing the

credibility of a witness, to specifically consider the fact that the witness suffered a felony conviction. (CT at 771.)

As the record indicates, the prosecutor complied with his duty to disclose agreements made to witnesses. Therefore, petitioner's right to due process was not violated.

### b. Use of Perjured Testimony

Petitioner contends that the prosecutor committed misconduct by knowingly introducing perjured testimony of an eyewitness at trial and for failing to disclose that the witness recanted his testimony. Clarence Jacks ("Jacks") was an eyewitness and the trial court allowed his preliminary examination hearing testimony to be read to the jury. Jacks testified that he saw petitioner shoot the victim. (RT at 1665-1666, 1674-1675.) Petitioner offers a report and polygraph examination taken two years after trial, in which Jacks recants his testimony.

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such a conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 101 (1976). If the prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts. United States v. LaPage, 231 F.3d 488, 492 (9th Cir. 2000). In addition, mere recantation of testimony is insufficient for habeas relief. See Hysler v. Florida, 315 U.S. 411, 413 (1942).

To prevail on a claim based on the prosecutor using false testimony, the petitioner must show that the testimony was actually false, the prosecution knew or should have known that the testimony was actually false, and that the false testimony was material. United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue v. Illinois, 360 U.S. 265, 269-271 (1959)).

In 2002, San Mateo Sheriff's Officer, Sergeant Linda Gibbons ("Gibbons"), was in contact with Jacks on a matter unrelated to the present case. Jacks was in jail for another

charge and telephoned Gibbons. According to Gibbons' report, Jacks confessed over the phone that he did not actually see petitioner shoot the victim as he had testified at petitioner's preliminary hearing. He stated that he was in the general vicinity of the incident and heard a shot fired. Jacks said that he testified to being an eyewitness in order to help himself out with his own case. (Resp.'s Ex. F at Attachment C at Ex. A.) Gibbons then arranged for Jacks to take a polygraph test. While taking the polygraph test, Jacks said that he witnessed the shooting, and then claimed again to have lied about it. The polygraph examiner declared the test results inconclusive. Id. Petitioner's trial attorney received the results of the test and Gibbons' report.

As stated above, to establish a due process violation, petitioner must show that the prosecution knowingly used perjured testimony. Napue, 360 U.S. at 270-271. To begin with, because the polygraph results were inconclusive, there is not conclusive evidence that Jacks' preliminary hearing testimony was actually false. Furthermore, Jacks did not recant his testimony until long after the trial, and petitioner points to no evidence that the prosecutor knew or should have known that at the time of trial Jacks' testimony was false or that Jacks would later recant it. Petitioner's allegations alone, without more, are insufficient to establish that the prosecutor violated petitioner's right to due process by knowingly presenting false testimony.

        c.      <u>Failure to Disclose Exculpatory Evidence</u>

Petitioner contends that the prosecutor committed misconduct because he concealed exculpatory evidence. He claims that the prosecutor possessed a blood sample that was possible exculpatory evidence and the prosecutor failed to conduct an examination of the evidence in order to determine whether the blood belonged to the victim, petitioner, or someone else. Prosecution witness, Kelly Gallagher, a Forensic Specialist, testified that she observed what appeared to be blood on top of the passenger door. She testified that she could not recall if any examination was conducted in order to confirm that it was indeed blood.

The prosecutor must turn over any evidence that might create a reasonable doubt

that otherwise would not exist. <u>Agurs</u>, 427 U.S. at 112-113; see <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution). The duty to disclose evidence favorable to the accused encompasses exculpatory evidence. <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).

The prosecutor did in fact give petitioner's trial counsel a copy of the criminalist's report. (RT at 1218.) Petitioner does not point to any evidence that his counsel was denied access of the alleged blood sample or that his counsel was prevented from testing the unknown substance. Therefore, the prosecution's conduct was not improper and there was no violation of due process. Accordingly, habeas relief is not warranted on this claim.

        2.        <u>Ineffective Assistance of Counsel</u>

Petitioner raises four claims of ineffective assistance of trial counsel. A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. <u>Id.</u>

In order to prevail on an ineffective assistance claim, petitioner must establish deficient performance and resulting prejudice. First, an attorney's performance qualifies as deficient if it falls below an "objective standard of reasonableness." <u>Id.</u> at 687-688. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Id.</u> at 689. Second, prejudice has resulted if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Id.</u> at 694. A reasonable probability is a

probability sufficient to undermine confidence in the outcome.  Id.  If the petitioner cannot establish incompetence under the first prong of Strickland, then a federal court considering a habeas ineffective assistance of counsel claim does not have to analyze prejudice under the second prong.  Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

    a.  Failure to Prepare for Trial

  Petitioner contends that his counsel failed to adequately prepare petitioner's case.  He argues that counsel did not conduct an independent investigation of the events of the incident, did not obtain an investigator to discover mitigating facts or an expert to conduct a social history evaluation for petitioner, filed inadequate pre-trial motions, was deficient in conducting both the guilt and penalty phases of the trial, and failed to interview witnesses.  Petitioner contends that because of trial counsel's inadequate preparation, counsel had no theory of petitioner's defense, was unprepared for effective examination of witnesses, and did not make an informed assessment of the prosecution's case.

  A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  Strickland, 466 U.S. at 691.  Counsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how to best represent his client.  Avila v. Galaza, 297 F.3d 911, 924 (9th Cir. 2002).  However, a defendant can make out a claim of ineffective assistance of counsel only by pointing to specific errors made by trial counsel.  United States v. Cronic, 466 U.S. 648, 666 (1984); see Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended, 253 F.3d 1150 (9th Cir. 2001) (a defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance).

  Petitioner provides no specific information regarding counsel's alleged failure to prepare.  He does not point to any mitigating facts an investigator or counsel would have discovered with further investigation.  Petitioner does not allege what counsel would have learned had he obtained a social history evaluation, nor does he identify the testimony an

expert would have given that would have been helpful to the defense. Further, petitioner does not point to evidence that warranted expert testimony, and in the absence of such evidence, the failure to call an expert does not amount to ineffective assistance of counsel. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999). Petitioner gives no reason why counsel's pre-trial motions and examination of witnesses were deficient. He does not identify any specific witnesses counsel should have interviewed, or what such witnesses knew that would have strengthened his case. Overall, petitioner's allegations fail because they are too are general, conclusory, and speculative.

Because petitioner fails to describe any specific failure or shortcomings in counsel's preparation and investigation of the case, there is no basis for finding that counsel's performance was either deficient or prejudicial in that regard. Therefore, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### b. Failure to Adequately Consult with Petitioner

Petitioner contends that counsel was ineffective for failing to spend enough time with him discussing the case.[1] Petitioner contends that had counsel spent more time with him, he would have discovered that Jacks perjured himself. Petitioner gives no basis for this claim. He does not state that, at the time, he knew that Jacks perjured himself, or how counsel would have discovered this to be the case had counsel consulted petitioner. Also, Jacks did not recant his testimony until two years after the trial. There is no evidence that suggests counsel could have discovered, at the time of trial, that Jacks perjured his testimony.

In sum, there is no indication in the record that trial counsel would have discovered anything helpful to petitioner had he spent more time with him. Consequently, counsel's alleged failure to do so was neither deficient nor prejudicial.

### c. Failure to Develop Defense Theory

---

[1] Petitioner does not indicate how much time counsel did consult with petitioner or how much more time would have been sufficient.

Petitioner contends that counsel failed to present a defense that no version of the events was supported by physical evidence. Petitioner claims that because counsel did not conduct an adequate investigation he was unaware that the physical evidence did not support the prosecution witnesses' testimony.

A trial attorney has wide discretion in making tactical decisions, including abandoning unsupported defenses. United States v. Rodriguez-Ramirez, 777 F.2d 454 (9th Cir. 1985); Correll v. Stewart, 137 F.3d 1404, 1411-1412 (9th Cir. 1998). A court must consider not only the quantum of evidence that is known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. Wiggins v. Smith, 539 U.S. 510, 526-527 (2003).

Although petitioner claims that there is no physical evidence to support the conviction, the record indicates the contrary. When petitioner was arrested six weeks after the shooting, he was found with the loaded murder weapon. (RT at 773-775.) Consequently, counsel could not have presented a defense theory that the charges were not supported by any physical evidence. Moreover, petitioner provides no specific information as to how counsel should have conducted his investigation or how such investigation would have enabled him to present a defense theory based on the absence of physical evidence. In light of the physical evidence presented at trial, counsel's decision not to advance a defense that there was no such evidence was well within the wide range of reasonable professional assistance. As such, the state courts' rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

    d.  Failure to Request Cautionary Instruction

Petitioner contends that counsel was ineffective for failing to request a cautionary jury instruction regarding informant testimony. Petitioner argues that counsel should have requested the instruction informing the jury to consider the benefits given to the prosecution witnesses when determining whether to believe their testimony and their purpose for doing so. This claim has no merit. Counsel requested the instruction and it

N:\MJJ\Week of 7.9.07\walker.dny.wpd      10

was granted.  The jury was instructed pursuant to CALJIC No. 2.20, regarding the credibility of a witness who has been convicted of a felony.  (CT at 769-771.)  Also, counsel's request was granted in instructing the jury to scrutinize more carefully the testimony of witnesses who have been granted immunity.  (CT at 894.)  Thus, defense counsel's jury instruction requests were reasonable and did not amount to ineffective assistance.

### 3. Insufficient Evidence

Petitioner contends that his due process rights were violated because there is insufficient evidence to support his conviction.  Specifically, petitioner argues that the judgment is based on testimony of admitted drug users and convicted felons, which makes the evidence unreliable and insufficient.

To sustain a conviction, the Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute" the crime charged.  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which if proven, entitles him to federal habeas relief.  Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992) (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  Jackson, 443 U.S. at 324.

On habeas review, a federal court evaluating the evidence under In re Winship and Jackson v. Virginia should take into consideration all of the evidence presented at trial.  LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F. 3d 950, 957 (9th Cir. 2004).

Petitioner points to the inconsistencies in prosecution witnesses testimony and argues that this makes the evidence unreliable and thus insufficient so support his conviction. Although there are inconsistencies in witness testimony, these discrepancies are minor and not material.[2] The jurors knew that they were the ultimate judges of credibility and fact. The jury was instructed, pursuant to CALJIC No. 2.21.1, that discrepancies between witness testimony did not necessarily mean the testimony should be discredited. (CT at 769, 773.) Further, there was ample evidence from which a rational juror could have concluded beyond a reasonable doubt that petitioner was in fact the person who shot the victim. Specifically, petitioner was found with the murder weapon when he was arrested six months after the incident. (RT at 773-775.) Moreover, two eyewitnesses testified that they saw petitioner shoot the victim. In addition to Jacks, who testified to seeing petitioner shoot the victim, Strauter testified that she was standing next to petitioner by the victim's passenger door. She said that the victim asked for cocaine and then began fumbling with his money. Strauter testified that she heard a shot and that petitioner shot into the victim's car. (RT at 2544-2553).

The jury also heard testimony from witnesses to whom petitioner admitted shooting the victim. Hamilton testified that he saw petitioner the day of the shooting and petitioner admitted to him that he shot the victim. (RT at 1367.) According to Hamilton, petitioner said a "Chinaman" drove up and asked for a twenty dollar piece of cocaine.

---

[2] Eyewitness Jacks testified that he heard Celestine Strauter ("Strauter") "say something about gaffeling", whereas Strauter testified that she did not use the word "gaffeling" during the incident. (RT at 1673, 2560.) Marquis Ray Hamilton ("Hamilton") testified that petitioner told him he "stuck the pistol" in the victim's car and fired it, while Ronnie Lamont Mitchell ("Mitchell") testified that petitioner told him that the victim's car "accidentally hit the side of . . . his arm with the gun in it and it went off." (RT at 1367, 1743.)

Because petitioner recognized him as someone who had been cheating other people, petitioner asked him about it and the victim started to drive away.  Petitioner then pulled out his gun and fired once as the victim drove off.  The car crashed into a fence, and petitioner rode up to the victim on his bicycle and took back the cocaine rock that he had just sold him.  (RT at 1367-1369.)  Hamilton testified that petitioner also showed him the gun he used to shoot the victim.  (RT at 1373.)

In addition, Roderick Patterson ("Patterson") testified that while he and petitioner were both in prison, petitioner said he shot the victim because the victim tried to cheat him out of his drugs.  (RT at 1887, 1897-1898.)  He also told Patterson that he was worried about the possible testimony of eyewitness Strauter.  (RT at 1901.)  Petitioner also confessed the shooting to Mitchell, petitioner's cell mate from August-September 1999.  Mitchell testified that petitioner told him the shooting was an accident.  (RT at 1743.)  Petitioner pulled out his gun when he recognized the victim as the person who was cheating other drug dealers.  When the victim tried to drive away, petitioner's hand caught on something in the car, and the gun went off.  (RT at 1743-1744.)  Petitioner also told Mitchell that he was trying to silence a female witness.  According to Mitchell, petitioner directed a friend named "Natasha" to give a prospective witness a fair amount of rock cocaine and "tell her to drop out of sight."[3]  (RT at 1744-1745.)

Finally, petitioner's girlfriend testified that petitioner asked her to provide a false testimony.  Petitioner asked her to testify that he was with her at the time of the shooting.  This request was in a letter that petitioner wrote to his girlfriend from jail.  The letter was read to the jury.  (RT at 1566-1567, 1569-1571.)

Although there were inconsistencies in the prosecution witnesses' testimony, such inconsistencies were relatively minor in the context of all of the inculpatory evidence at trial.  As a result, a rational jury could find petitioner guilty beyond a reasonable doubt.

---

[3] The defense presented the testimony of a woman named Natasia Malcic, who denied attempting to dissuade witnesses from testifying against petitioner or asking them to provide false testimony.  (RT at 2418-2422.)

Thus, the state courts' denial of the claim was not contrary to, nor an unreasonable application of federal law, and petitioner is not entitled to habeas relief on the basis of this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file and terminate all pending motions.

IT IS SO ORDERED.

DATED: 7/9/2007

*/s/ Martin J. Jenkins*
MARTIN J. JENKINS
United States District Judge